<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
RICHARD DALTON,                     :
                                    :    CIVIL ACTION NO. 05-2758 (MLC)
      Plaintiff,                    :
                                    :    MEMORANDUM OPINION
      v.                            :
                                    :
JO ANNE B. BARNHART,                :
COMMISSIONER OF SOCIAL              :
SECURITY,                           :
                                    :
      Defendant.                    :
_____:
```

<u>**COOPER, District Judge**</u>

Plaintiff, Richard Dalton ("plaintiff"), applies for judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments.  (Dkt. entry no. 1.)  The Court has jurisdiction pursuant to 42 U.S.C. § ("Section") 405(g).  The Court, for the reasons stated herein, will reverse the Commissioner's decision and remand for further proceedings in accordance with this memorandum opinion.

**BACKGROUND**

The plaintiff filed a claim for SSI payments and DIB on May 31, 2002, alleging disability beginning on July 20, 2001.  (Admin. Rec. ("A.R.") at 79.)  The claim was denied initially and on reconsideration, and the plaintiff requested a hearing before

an administrative law judge on March 27, 2002.[1]  (Id. at 62, 70,

73.)  Administrative Law Judge Christine McCafferty ("ALJ")

conducted a hearing on April 22, 2004, in which both the

plaintiff and a vocational expert, Margaret A. Preno, appeared

and testified.  (Id. at 25.)

The ALJ issued a decision on August 19, 2004, finding that

the plaintiff was not eligible for SSI payments or DIB.  (Id. at

21, 22.)  The ALJ found that, inter alia, (1) plaintiff has

"severe impairments consisting of depression and bipolar

disorder, but he does not have an impairment or combination of

impairments listed in, or medically equal [to] a listing," (2)

plaintiff has a mental impairment that "causes mild restrictions

on daily living, no difficulties in social functioning, moderate

difficulties in concentration, persistence, or pace, and resulted

in no episodes of decompensation," (3) plaintiff's "mental

retardation is not medically determinable (20 C.F.R. 404.1508 and

20 C.F.R. 416.908)" and "his borderline intellectual functioning

is not severe (20 C.F.R. 404.1521 and 416.921)," (4) plaintiff's

"allegations as to the severity of his symptoms and limitation in

relation to his ability to perform basic work activities are not

fully supported by the evidence of record and are partially

credible," (5) plaintiff "does not have any physical limitations,

---

[1]     Plaintiff's request for a hearing by an ALJ was
untimely, but good cause was found and the request was processed.
(A.R. at 15.)

and, therefore, is able to perform work at all exertional levels"
and "retains the ability to perform simple, routine tasks," and
(6) plaintiff "is able to perform his past relevant work of
motorcycle assembler and general machine operator."  (Id. at 21-
22.)  The ALJ also noted in the findings the vocational expert's
testimony "that there were other unskilled occupations existing
in significant numbers in the national economy that the claimant
could perform," and went on to list those occupations.  (Id. at
22.)

    The plaintiff requested a review of the ALJ's decision by
the Appeals Council on September 13, 2004.  (Id. at 11.)  The
Appeals Council denied the plaintiff's request for review on
March 25, 2005, making the ALJ's August 19, 2004 decision the
Commissioner's final decision.  (Id. at 5.)  The plaintiff
applied for review in this Court on May 26, 2005.  (Dkt. entry
no. 1.)

                         **DISCUSSION**

**I.   Standard Of Review**

    The Court may review a "final decision of the Commissioner
of Social Security" in a disability proceeding.  42 U.S.C. §
405(g).  The Court may affirm, modify, or reverse the decision of
the Commissioner, with or without remanding the case for a
rehearing.  Id.  However, this judicial review is limited.  The
Court must affirm the Commissioner's decision regarding

                             3

disability benefits if an examination of the record reveals that the findings of fact are supported by substantial evidence.  <u>Id.</u>; <u>Reefer v. Barnhart</u>, 326 F.3d 376, 379 (3d Cir. 2003). "Substantial evidence" in the context of a social security matter is defined as less than a preponderance of the evidence but "more than a mere scintilla," <u>i.e.</u>, such evidence "as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  This standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999).

The Court, despite the deference given to administrative decisions, "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence." <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).  Furthermore,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

<u>Kent v. Schweiker</u>, 710 F.3d 110, 114 (3d Cir. 1983).  "That the record contains evidence which could have supported a different conclusion does not undermine" the Commissioner's decision provided that the record contains substantial evidence supporting

4

that decision.  Rivera v. Shalala, No. 94-2740, 1995 WL 495944,
at *3 (D.N.J. July 26, 1995).  The Commissioner is required,
however, to address and reconcile medical evidence that would
support a contrary conclusion.  Schaudeck, 181 F.3d at 434-35.

## II.  Determining Eligibility For Disability Benefits

The term "disability" is defined as the "inability to engage
in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C. §
423(d)(1)(A).  An individual is determined to be disabled if the
individual's "physical or mental impairment or impairments are of
such severity that [the individual] is not only unable to do his
[or her] previous work but cannot, considering his [or her] age,
education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy."
Id. at § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a
person is "disabled."  In the first step, the ALJ determines
whether the claimant is currently engaged in "substantial gainful
activity."  20 C.F.R. § 404.1520(a)(4)(I).  If the claimant is so
engaged, the ALJ will find that the claimant is not disabled and
the application for disability benefits will be denied.  Id. at
§ 404.1520(b).  If the claimant is not employed, the ALJ will

consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step.  Id. at § 404.1520(a)(4)(ii).  A "severe impairment" is one that significantly limits the claimant's physical or mental ability to do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions.  Id. at §§ 404.1521(a)-(b), 416.921(a)-(b).  A claimant who does not meet this requirement is not disabled.  Id. at § 404.1520(c).  In essence, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows severity, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the Code of Federal Regulations ("CFR").  20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals a listed impairment, the claimant is presumed to be disabled, and the evaluation ends at this stage.  Id. § 404.1520(d).  If the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four.  Id. at § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the

6

claimant performed in the past.  Id. at § 404.1520(a)(4)(iv).  The claimant, if able to resume the former occupation, will not be considered disabled.  Id.  If the claimant cannot resume previous work, the ALJ moves to step five and considers the claimant's ability to perform other work that is available in the national economy.  Id. at §§ 404.1520(a)(4)(v), 404.1520(e).  This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  Id.  A claimant, if unable to adjust to any other work in the national economy, will be found disabled.  Id. at § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would allow him or her to engage in alternative substantial gainful employment.  Id.

## III. Analysis

Plaintiff argues that (1) the ALJ erred at step two in deciding that plaintiff's borderline intellectual function is not severe; (2) the ALJ erred at step three in concluding that plaintiff did not meet listing 12.04(3), Bipolar syndrome; (3) the ALJ's decision in step four that plaintiff can return to his past work is not supported by substantial evidence; and (4) the ALJ erred when he posed a "legally and factually deficient"

7

hypothetical question to the vocational expert "which failed to adequately encompass [plaintiff's] work-related mental limitations of function."  (Pl. Br., at 17.)

In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects." Plummer, 186 F.3d at 429.  The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected. Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice. Id. While the ALJ is not required to reference each and every treatment notation with particularity in the analysis, the ALJ must "consider and evaluate the medical evidence in the record consistent with [the] responsibilities under the regulations and case law." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429.

This policy allows the Court to properly review the ALJ's decision pursuant to Section 405(g) to determine whether the decision is supported by substantial evidence. Cotter, 642 F.2d at 705.  The Court, without an indication as to what evidence the ALJ considered or rejected, "cannot tell if significant probative evidence was credited or simply ignored." Id. Although the ALJ

is not required "to use particular language or adhere to a particular format in conducting his analysis," the ALJ's findings must provide "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

### A.    The ALJ Erred at Step Two

Plaintiff argues that the ALJ's finding at step two that his borderline intellectual functioning was not a severe impairment should be reversed because the ALJ did not (1) give proper weight to the findings of Dr. Plahovinsak and Dr. Baharlias, (2) consider the limiting effects of the condition, and (3) issue a finding based on substantial evidence.  (Pl. Br., at 18-21.)  In concluding that plaintiff's borderline intellectual functioning was not severe, the ALJ found that:

> The claimant also alleges disability because of mental
> retardation.  However, when he underwent a
> psychological consultative examination [with Dr.
> Plahovinsak] in July 2002 and was administered the
> Wechsler Adult Intelligence Scale-III (WAIS-III), his
> verbal intelligence quotient (IQ) was tested to be 72,
> his performance IQ to be 78, and his full scale IQ to
> be 73, or indicative of borderline intellectual
> functioning (Exhibit 3F).  When he was independently
> examined by [Dr. Baharlias] at the request of his
> representative, [Dr. Baharlias] also noted that he
> believed the claimant to have borderline intellectual
> functioning (Exhibit 9F).  His therapist indicated that
> the claimant had fair intelligence (Exhibit 7F).
> Therefore, the record does not demonstrate that the
> claimant has mental retardation (20 C.F.R. 404.1508 and
> 416.908).  The record also demonstrates that the
> claimant was able to work on various laborer and
> handyman jobs, despite his borderline intellectual

functioning.  Therefore, this impairment is found not
to be severe (20 C.F.R. 404.1521 and 416.921).

(A.R. at 16.)

Plaintiff's first point is without merit because the ALJ
accepted the findings of Dr. Plahovinsak and Dr. Baharlias that
his IQ scores showed he had borderline intellectual functioning –
the ALJ did not reject the medical evidence of plaintiff's IQ, as
plaintiff appears to argue in his brief.  (Id.)  The Court finds
that plaintiff's second and third points have merit because the
ALJ did not sufficiently evaluate and weigh the medical evidence
in reaching the conclusion that his borderline intellectual
functioning is not severe.

"The step-two inquiry is a de minimis screening device to
dispose of groundless claims."  Newell v. Comm'r of Soc. Sec.,
347 F.3d 541, 546 (3d Cir. 2003).  In order to show that an
impairment is severe, a claimant has to demonstrate "something
beyond a slight abnormality or a combination of slight
abnormalities which would have no more than a minimal effect on
an individual's ability to work."  McCrea v. Comm'r of Soc. Sec.,
370 F.3d 357, 360 (3d Cir. 2004).  "Any doubt as to whether this
showing has been made is to be resolved in favor of the
applicant."  Id.

It appears that the ALJ based the conclusion that
plaintiff's borderline intellectual functioning was not a severe

impairment on the fact that (1) plaintiff was not mentally
retarded and (2) he was able to work various laborer and handyman
jobs.  The ALJ failed to evaluate plaintiff's borderline
intellectual functioning impairment in consideration of his age,
education, and actual work experience.  See Bowen, 482 U.S. at
153.  Even if it were proper for the ALJ to rely almost
exclusively on the plaintiff's ability to hold a job, the record
shows that plaintiff was actually unable to hold a job for any
significant period of time, other than when he worked for family
members.  (A.R. at 86, 88-92.)

     The ALJ's findings do not provide substantial evidence in
support of the decision that plaintiff's borderline intellectual
functioning was not severe.  Merely noting that the plaintiff has
held jobs in the past is not sufficient to support a conclusion
that his impairment was only a "slight abnormality."  The ALJ did
not explain how the limiting effects of the condition affected
his ability to work.  The ALJ's findings do not address the
conclusion that although the plaintiff suffered from borderline
intellectual functioning, this impairment "would have no more
than a minimal effect on an individual's ability to work."
McCrea, 370 F.3d at 360.  Without these explanations from the ALJ
this Court cannot conclude that the ALJ's decision at step two is
supported by substantial evidence.  Therefore, the Court
concludes that it is necessary to remand so that the ALJ can

11

provide more detailed findings addressing the severity of
plaintiff's borderline intellectual functioning.

**B.    The ALJ Erred at Step Three**

Plaintiff next argues that the ALJ "did not discuss the
evidence or explain the reasoning supporting her determination"
at step three.  (Pl. Br., at 22.)  More specifically, plaintiff
argues that the ALJ's analysis is deficient because she failed to
"conduct any inquiry into whether [plaintiff's] impairment
satisfied the requirements of Listing 12.04(3), Bipolar
syndrome."  (A.R. at 17.)  This Court agrees that the ALJ's
comparison of plaintiff's bipolar disorder to the listing for
bipolar syndrome was deficient and her decision that plaintiff's
bipolar disorder did not meet any listing impairment is not
supported by substantial evidence.

When there is a conflict in the medical evidence, "the ALJ
may choose whom to credit but cannot reject evidence for no
reason or for the wrong reason."  Plummer, 186 F.3d at 429.  The
ALJ is required to consider all of the evidence and provide a
reason for a decision to reject or discount any evidence.  Id.
Opinions of treating physicians on the nature and severity of a
plaintiff's impairments are given controlling weight when they
are "well-supported by medically acceptable clinical and
laboratory diagnostic techniques" and consistent with other
substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).
An ALJ may only outright reject the medical judgment of a

12

treating physician if the opinion is contradicted by medical evidence in the record, and must explain the decision to do so. Plummer, 186 F.3d at 429.

The ALJ, at step two of the analysis here, found that "there are medical findings of depression and bipolar disorder, which could place significant limitations upon the claimants ability to perform basic work-related activities." (A.R. at 16.) At step three of her analysis the ALJ explained her decision that plaintiff's severe impairments did not equal a listing as follows:

> The evidence indicates that the claimant was diagnosed with bipolar disorder in May 2003 (Exhibit 6F) at which time he began outpatient treatment. The medications that were prescribed for the claimant were of some benefit, according to the treatment notes and the claimant ceased reporting hallucinations and had improvement in his mood swings and sleep. As of his last psychiatric evaluation, which occurred in February 2004, the claimant's mood was "dysphoric" and his affect was "full range." The conclusions of the psychologist who evaluated the claimant in May 2004 for his representative are not supported by the treatment records and given that they are based on one evaluation, the opinion is not accorded with significant weight by the undersigned.

(A.R. at 16-17.) The ALJ stated that she specifically considered Listing 12.04, Affective Disorders, and Listing 12.06, Anxiety-related Disorders. (A.R. at 16.) Although the ALJ is not required to identify specific listings in the analysis, the ALJ failed to adequately explain why she rejected plaintiff's treating physician's diagnosis of bipolar disorder equaling the

13

listing for bipolar syndrome and instead credited the state agency doctor, who diagnosed plaintiff with bipolar disorder but found that none of his impairments amounted to a listed impairment.  Therefore, the Court finds that a remand is necessary because the ALJ discredited the report of plaintiff's treating physician, as well as the reports and other medical evidence in the record supporting the treating physician's conclusion, without providing a sufficient explanation.

Plaintiff's treating physician, Dr. Marina Kharaz, diagnosed plaintiff as suffering from bipolar disorder in a report dated June 19, 2003.  (Id. at 181, 184.)[2]  The ALJ did "not fully credit[]" this evidence on the grounds that there was no indication that plaintiff was evaluated by a psychiatrist on that date, the report was filled out at the beginning of plaintiff's treatment by a psychiatric nurse, and the opinion and assessment was given by the State of New Jersey Division of Family Development and not binding on the Social Security Administration.  (A.R. at 18, 181.)

The Court finds that the ALJ's decision to "not fully" credit the reports and diagnoses of Dr. Kharaz is not supported

---

[2]     The ALJ incorrectly describes Exhibit 6 as being signed by a psychiatrist on May 30, 2003.  (A.R. at 18.)  However, closer review of Exhibit 6, specifically page 184 of the administrative record, reveals that the report was signed by Dr. Kharaz on June 19, 2003, and that the May 30, 2003 date on the top of the form refers to the date when plaintiff was first seen by Dr. Kharaz.

by substantial evidence.  Plaintiff submits that Dr. Kharaz is his "treating psychiatrist" and was "part of a team of managed care operating out of a facility titled Preferred Behavioral Health" where plaintiff has attended a treatment program three to four times weekly since April of 2003.  (Pl. Br., at 7; A.R. at 185.)  This conclusion is bolstered by the fact that Dr. Kharaz signed the report and noted that she first saw plaintiff on May 30, 2003, that she had seen him before the examination, that he was currently under her care, and that plaintiff was currently compliant with treatment.  (Id. at 183-84.)  Moreover, even if the opinion of the State of New Jersey Division of Family Development as to plaintiff's disability is not binding on the Social Security Administration, to the extent that the opinion is given by plaintiff's treating physician, it should be afforded the proper deference.

The ALJ also failed to accord Dr. Kharaz's subsequent diagnosis of bipolar disorder in February 2004 the proper weight. The ALJ noted that at plaintiff's last psychiatric examination in February 2004 his mood was "dysphoric" and his affect was "full range," but does not mention until three pages later in the decision that at the same examination plaintiff was also diagnosed with bipolar disorder.  (Id. at 16-17, 19, 189.)  The ALJ does not acknowledge anywhere in her discussion of the

15

February 2004 examination that the examination and report were completed by Dr. Kharaz, plaintiff's treating physician.

The Court also finds that the ALJ erred in failing to evaluate in the decision additional relevant medical evidence of plaintiff's bipolar disorder.  The ALJ noted that Dr. Plahovinsak, who examined plaintiff at the request of the Social Security Administration, diagnosed plaintiff in 2002 with bipolar disorder, mixed type.  (Id. at 18, 162.)  The ALJ, however, did not otherwise weigh or evaluate Dr. Plahovinsak's diagnosis and findings.  The ALJ may have had a valid reason for doing so, but the failure to document the evaluation of this relevant evidence leaves the Court without any way of evaluating whether his decision was reasonable and supported by substantial evidence.

The ALJ failed to credit the mental impairment assessment completed by nurse Linda Davis in April 2004 on the grounds that she was not a licensed psychologist or psychiatrist, and despite plaintiff's assertions to the contrary it appeared that she had not served as plaintiff's therapist prior to the examination.  (Id. at 19, 210.)  The ALJ, however, did not mention or weigh Nurse Davis's specific diagnosis of bipolar disorder before summarily disregarding her report.  (Id.)  This diagnosis and evidence was given by plaintiff's treating therapist and relevant to the ALJ's analysis of whether plaintiff's bipolar disorder equaled the listing bipolar syndrome.  Therefore, it should have

16

been evaluated and weighed by the ALJ in the decision rather than being summarily discredited on the grounds that Davis was not a psychiatrist of psychologist.

The only medical evidence the ALJ appears to rely upon in support of the findings is the report of the state agency doctor, Dr. Wieliczko, who noted that the record did not support a finding that plaintiff's impairments equal listings 12.04 (Affective Disorders), 12.05 (Mental Retardation), or 12.06 (Anxiety-Related Disorders).  (A.R. at 163.)  The ALJ credited Dr. Wieliczko's findings that plaintiff had mild restriction on activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation for extended duration. (Id. at 173.)  The ALJ did not, however, address Dr. Wieliczko's diagnosis of bipolar syndrome.  (Id. at 166.)

The Court concludes that the ALJ's finding that plaintiff's bipolar disorder did not equal listing impairment 12.04(3) (Bipolar syndrome) was not based on substantial evidence because the ALJ erred by failing to give significant weight to the opinions of plaintiff's treating physician, and failed to evaluate and weigh all of the relevant medical evidence.  See Gonzalez v. Barnhart, No. 05-4945, 2006 WL 2471719, at *7 (E.D. Pa. Aug. 24, 2006) (addressing ALJ's failure to accord proper weight and deference to report and diagnosis of treating

17

physician).  Although the ALJ credited the state agency doctor's report over that of Dr. Kharaz, the ALJ's consideration of Dr. Kharaz's reports and diagnoses was still incomplete because she failed to acknowledge that Dr. Kharaz was plaintiff's treating physician.  Insofar as the ALJ did not equivocate or compare plaintiff's borderline intellectual functioning with any listed impairments, if the ALJ finds that particular impairment is severe on remand, the ALJ should compare it with the relevant listings when re-conducting the analysis at step three.

### C.   The ALJ Erred at Steps Four and Five

Plaintiff next argues that the ALJ erred in relying upon a hypothetical question she posed to the vocational expert that did not take into account his documented borderline intellectual functioning, limited focus, concentration, attention and cognitive function.  (Pl. Br., at 31.)  The Commissioner argues that the inclusion of the phrase "simple, repetitive tasks" in the ALJ's hypothetical adequately addressed plaintiff's limitations.  (Def. Br., at 20.)

An ALJ commonly seeks advisory testimony from a vocational expert at the fourth and fifth steps of the five-step process.  Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002).  The ALJ will normally focus the expert's testimony on the claimant's capability to perform certain types of jobs, given certain assumptions about the claimant's limitations expressed by the ALJ via hypotheticals.  Id. at 120.

18

A hypothetical posed by the ALJ to the vocational expert must include all of a claimant's physical and mental impairments. Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004); Burns, 312 F.3d at 123.  "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."  Burns, 312 F.3d at 123.  In Burns, the Third Circuit held that the hypothetical's limiting description of "simple repetitive one, two-step tasks" did not adequately convey or incorporate all of the claimant's intellectual deficiencies arising out of his borderline intellectual functioning, and that "greater specificity" was required.  Id.

In this case the ALJ only posed one hypothetical to the vocational expert:

> Q   I want you to assume an individual Claimant's age, education and work experience having the following residual functional capacity: Having no physical limitations but being limited to simple, repetitive tasks. Could the individual return to Claimant's past relevant work?
> A   He could return to the, the unskilled --
> . . . .
> A   –machine feeder.– And --
> . . . .
> Q   Alternatively, are there other jobs in the regional or national economy that such an individual could return to?
> A   There would, Your Honor.  Some examples of those jobs would be cleaner. . . .

(A.R. at 56-57.)  The ALJ relied upon the vocational expert's testimony as support for her finding at step four that plaintiff

was capable of performing his past relevant work of motorcycle assembler and general machine operator, as well as her finding at step five that there were other unskilled occupations existing in significant numbers in the national economy that plaintiff could perform.  (A.R. at 22.)

The Court finds that here, as in <u>Burns</u>, the limitation of "simple, repetitive tasks" in the ALJ's hypothetical did not adequately convey or incorporate all of plaintiff's limitations arising out of his borderline intellectual functioning.[3]  The ALJ acknowledges in the decision that plaintiff's verbal intelligence quotient ("IQ") was 72, his performance IQ was 78, and his full scale IQ was 73.  (A.R. at 16.)  These scores put plaintiff in the bottom third, seventh and fourth percentile, respectively. (<u>Id.</u> at 158.)  Dr. Plahovinsak also noted that plaintiff's ability with numbers and social IQ via comprehension were in the deficient range, yet these limitations were also not taken into account in the hypothetical.  (<u>Id.</u>)

_____

[3]      The Court acknowledges that while the ALJ in <u>Burns</u> relied upon the deficient hypothetical at step five, where the ALJ has the burden of proof and vocational testimony is required, the ALJ here first relied upon the deficient hypothetical at step four, where plaintiff had the burden of proof and vocational testimony is not required, as well as at step five.  The Court finds, however, that the Third Circuit precedent regarding reliance on deficient hypotheticals applies regardless of whether the hypothetical is employed in step four or step five.  <u>See</u> <u>Steininger v. Barnhart</u>, No. 04-5383, 2005 WL 2077375, at *4 (E.D.Pa. Aug. 24, 2005) (noting that Third Circuit precedent on vocational expert's testimony applies where the ALJ's decision at step four relies on vocational expert's testimony).

Describing plaintiff as being limited to "simple, repetitive tasks" does not adequately convey plaintiff's limitations arising out of the severe degree of intellectual impairment indicated by the medically undisputed evidence.  See Ramirez, 372 F.3d at 554 (holding that hypothetical did not take into account claimant's mental limitations documented in the record); Burns, 312 F.3d at 123 (holding that phrase "simple repetitive one, two-step tasks" did not convey claimant's intellectual limitations because it could refer to a wide variety of mental or physical limitations). Therefore the Court concludes that remand is necessary because the ALJ's findings at step four and five of the evaluation process was not based on substantial evidence.

**CONCLUSION**

The Court, finding that the Commissioner's decision was not supported by substantial evidence, will therefore reverse the decision denying the plaintiff's claim and remand for further proceedings consistent with this memorandum opinion.  The Court will issue an appropriate order.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

21